No. 61,102

Leigh Palmer, *Appellant,* v. Paul Brown, M.D.; Gary B. Morsch, M.D.; Paul M. Wardlaw, M.D.; Michael W. Mathews, M.D.; Douglas R. Gwinn, M.D.; and Associates in Family Care, P.A., *Appellees.*

(752 P.2d 685)

Opinion filed March 25, 1988.

*Kevin M. Fowler,* of Frieden & Forbes, of Topeka, argued the cause and *Randall J. Forbes* and *John C. Frieden,* of the same firm, were with him on the brief for appellant.

*Mark A. Corder,* of Hackler, Londerholm, Corder, Martin & Hackler, Chartered, of Olathe, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

Herd, J: This is an action for retaliatory discharge in which

Leigh Palmer appeals the district court's order of dismissal for failure to state a claim upon which relief may be granted.

For the purpose of this appeal we accept the facts as stated by Palmer. Palmer is an experienced medical technician who was working in a medical laboratory in 1986 when Gary Coulter, executive vice-president of Associates in Family Care, P.A., (AFC) recruited her to administer AFC's in-house laboratory. Coulter told Palmer AFC wanted someone with her assertive nature who would not be easily manipulated by the AFC doctors. At the time she was hired, AFC had a policy of a 90-day probationary period for new employees. Palmer had no written employment contract, individual or union, with the AFC.

During Palmer's probationary period, she discovered at least one of the physicians was billing Medicaid for lab work which had not been performed. The appellees knew she possessed this knowledge.

Around the first of December, with her probationary period almost over, Coulter told Palmer her probation was being extended. He explained that, although AFC was pleased with the technical quality of her work, her overall performance would be reevaluated on or before January 16, 1987.

Following her discussion with Coulter, Palmer made changes in her operating procedures, attempting to please her employer, although she felt any criticism AFC had of her work was either totally unfounded or based on her adhering to Coulter's instructions to her when she was first hired. She then asked each of the member physicians if he was pleased with her work. They all said her performance was excellent.

Toward the end of December, Dr. Gary Morsch, a member of AFC, began insisting Palmer have lunch with him. When she finally accepted, he took the occasion to interrogate her about her knowledge of AFC's billing practices and to obtain her assurance she would keep the information secret. When she refused to assure him she would not report the practices to the appropriate authorities, he told her she could not be trusted and warned her if she were to say anything to anyone she would not be given permanent status with AFC.

About a week later, Palmer proceeded to transmit information to unspecified authorities which she said supported her suspi-

cions of Medicaid fraud. She was later informed, a week before the end of her new probationary period, that she was fired because her job performance had seriously deteriorated in the last two weeks. She claims her job performance had not deteriorated and that she was fired in retaliation for "whistleblowing." She does not, however, specifically allege AFC had knowledge she had reported the alleged fraud.

Palmer brought suit against AFC and the individual physicians based on the above facts. The appellees filed no answer and did not respond to discovery; instead, they moved to dismiss the suit on the ground Kansas does not recognize an exception to the employment-at-will doctrine except for retaliatory discharge for filing a workers' compensation claim.

At the hearing on the motion, Palmer argued the defendants had not addressed her "separate fraud and detrimental reliance" claims. However, the court held the motion to dismiss was based squarely on the pleadings and sustained the motion, holding Palmer had not stated a cause of action.

The first issue is whether discharge of a probationary employee in retaliation for the reporting of employer fraud or infraction of the law is a tort. A motion to dismiss for failure of the plaintiff to state a claim upon which relief can be granted, K.S.A. 60-212(b)(6), must be denied unless the allegations in the petition, viewed in the most favorable light to the plaintiff, clearly demonstrate the plaintiff is not entitled to relief under any set of facts which could be proved in support of the claim. *Keith v. Schiefen-Stockham Insurance Agency, Inc.*, 209 Kan. 537, 540, 498 P.2d 265 (1972).

We must, therefore, for purposes of review, assume Palmer was fired for reporting the illegal actions of her employers. Appellees disagree, arguing Palmer did not actually claim in her petition that they were aware she had notified state authorities. However, her allegation the termination took place "with the intent of punishing [her] for . . . reporting the unethical and illegal billing practices of AFC" is sufficient, under the applicable standard of review, to constitute such a claim.

The appellees have attached as an appendix to their brief a letter from the Surveillance and Utilization Review Section of the State Department of Social and Rehabilitation Services. The

letter was not written until a week after the district court's decision. It is not a part of the record in this case. Thus, it is not considered in this appeal.

Kansas has long held that, in the absence of an express or implied contract between an employee and employer regarding the duration of employment, either party is free to end the employment at any time for any reason. *Johnston v. Farmers Alliance Mutual Ins. Co.*, 218 Kan. 543, 546, 545 P.2d 312 (1976). This rule has many exceptions.

Public employees are constitutionally protected against wrongful discharge because such discharge involves state action. See *Wertz v. Southern Cloud Unified School District*, 218 Kan. 25, 29-31, 542 P.2d 339 (1975). Kansas public employees are specifically protected in their right to report violations of state or federal law to any person or agency under K.S.A. 75-2973(b)(1). An estimated 82% of all collective bargaining agreements contain "just cause" provisions which protect workers against wrongful discharge. See Note, *A Common Law Action for the Abusively Discharged Employee*, 26 Hastings L.J. 1435, 1448 (1975).

All at-will employees are statutorily protected from retaliatory discharge for reporting certain types of abuses. No employee may be fired for reporting child abuse, K.S.A. 38-1525; for reporting abuse of certain adults in need of care, K.S.A. 39-1403(b), 39-1423(b); for testifying before the secretary of human resources, K.S.A. 44-615; or for reporting unsafe or unlawful working conditions to the secretary of human resources, K.S.A. 44-636(f). K.S.A. 44-831 states an employee has a cause of action against any employer who violates the state's "right to work" amendment, Kan. Const. art. 15, § 12, by conditioning employment on membership or nonmembership in a union. K.S.A. 44-1009(a)(1) prohibits any employer of four or more persons from firing an employee because of race, religion, color, sex, physical handicap, national origin or ancestry.

Appellees argue the statutory exceptions to the right to terminate an employee at will are exclusive since it is generally the province of the legislature to declare public policy. *Noel v. Menninger Foundation*, 175 Kan. 751, 267 P.2d 934 (1954). The legislature has nevertheless provided that "[t]he common law as

modified by constitutional and statutory law, *judicial decisions,* and the *conditions and wants of the people,* shall remain in force in aid of the General Statutes of this state." K.S.A. 77-109. Before courts are justified in declaring the existence of public policy, however, "it should be so thoroughly established as a state of public mind so united and so definite and fixed that its existence is not subject to any substantial doubt." 175 Kan. 751, Syl. ¶ 4.

The Court of Appeals accepted its obligation to declare public policy in *Murphy v. City of Topeka,* 6 Kan. App. 2d 488, 630 P.2d 186 (1981), where the plaintiff alleged he was fired for refusing to withdraw his workers' compensation claim. A special panel of the Court of Appeals recognized a cause of action in tort, based on public policy, for wrongful discharge in retaliation for the filing of a workers' compensation claim. Noting that the Workers' Compensation Act is the exclusive remedy afforded an injured employee, the court held the Act's purpose in protecting employees could not be subverted by refuge in the employment-at-will doctrine.

In *Morton Bldgs., Inc. v. Department of Human Resources,* 10 Kan. App. 2d 197, 695 P.2d 450, *rev. denied* 237 Kan. 887 (1985), the Court of Appeals, in dicta, indicated *Murphy* is limited to actions in which the employee was discharged for filing a workers' compensation claim. Appellees urge we adopt this interpretation. But in *Morriss v. Coleman Co.,* 241 Kan. 501, 510, 738 P.2d 841 (1987), we indicated, in dicta, that *Murphy* was not limited to discharge for filing a workers' compensation claim. We held employees discharged because of a supervisor's disapproval of their private activities stated a valid claim under an implied contract theory, but noted, *"Murphy* is important because it opened the way to judicial recognition of a variety of public policy considerations which could support actions for tortious retaliatory discharges." 241 Kan. at 511.

In *Anco Constr. Co. v. Freeman,* 236 Kan. 626, 693 P.2d 1183 (1985), we did not state the holding in *Murphy* was so narrow it was confined to retaliatory discharge for the filing of a workers' compensation claim. We did state, however, that *Murphy* "applies only to interests protected by state law," in holding the claim of an employee who was fired for protesting the wage scale at his construction job was covered by the National Labor Relations Board rather than state tort law.

In *Kistler v. Life Care Centers of America, Inc.*, 620 F. Supp. 1268, 1269 (D. Kan. 1985), the United States District Court held a plaintiff had stated a cause of action for retaliatory discharge against public policy because she was fired for testifying against her employer at a state unemployment compensation hearing. The court held *Murphy*, although a limited public policy exception, was not confined only to discharge in retaliation for filing worker compensation claims, citing *Viestenz v. Fleming Companies, Inc.*, 681 F.2d 699 (10th Cir.), *cert. denied* 459 U.S. 972 (1982). The *Kistler* court, however, had more legislative guidance on state public policy than we do in the present case, because K.S.A. 44-615 specifically provides it is unlawful for an employer to fire an employee because of the employee's testimony before the secretary of human resources.

In *Cain v. Kansas Corporation Commission*, 9 Kan. App. 2d 100, 673 P.2d 451 (1983), *rev. denied* 235 Kan. 1041 (1984), the Court of Appeals found the plaintiff did not state a valid tort claim for retaliatory discharge for outspoken advocacy for consumers, but acknowledged *Murphy* had created a new tort for employment terminations which seriously contravened well-established public policy. Other Kansas appellate decisions have acknowledged, in dicta, that a public policy exception to the employment-at-will doctrine is now recognized. See *Anco Constr. Co. v. Freeman*, 236 Kan. 626; *Allegri v. Providence-St. Margaret Health Center*, 9 Kan. App. 2d 659, 664, 684 P.2d 1031 (1984).

Appellees argue *Murphy* should be limited to circumstances where an employee attempts to enforce a right directly related to him. They point out Palmer's interest was not a personal one. They also make the argument that it would be impossible to figure damages for the termination of an at-will employee, for even if we hold Palmer could not be fired in contravention of public policy as an exception to the employment-at-will doctrine, she could have been fired for another cause at any time. Finally, appellee argues Palmer was not asked to do anything illegal or unethical in the performance of her work.

The other argument is that Palmer would have been forced to commit a crime if she failed to report the fraud. Let us examine

the public policy involved in the implementation of the Medicaid program.

The federal Medicaid program makes funds available for the medical needs of the poor in participating states. 42 U.S.C. § 1392 (1982). To qualify for funds, a state's medical assistance plan must be approved by the Secretary of Health and Human Services and operated in accordance with federal standards. 42 U.S.C. § 1396a and c (1982); see *Country Club Home, Inc. v. Harder,* 228 Kan. 756, Syl. ¶ 5, 620 P.2d 1140 (1980), *modified* 228 Kan. 802, 623 P.2d 505 (1981). The Kansas Secretary of Social and Rehabilitation Services is responsible for administering the state's medical assistance program in cooperation with the federal government. K.S.A. 39-708c(a) and (s); K.S.A. 39-701; see *State ex rel. Stephan v. Harder,* 230 Kan. 573, 576, 641 P.2d 366 (1982).

Medicaid fraud is a felony under both state and federal law. K.S.A. 21-3904 (presenting a false claim); 42 U.S.C. § 1396h(a) (1982). Health care providers committing Medicaid fraud may be barred from participation in the program, 42 U.S.C. § 1320a-7(b) (1985 Supp.); K.A.R. 30-5-60(a)(12), (13), and (15), and are subject to civil penalties under federal law. 42 U.S.C. § 1320a-7a(a) (1982). Medicaid fraud is sometimes detected through the Department of Social Rehabilitation Service's toll-free "Fraud Hotline," which citizens may call to report fraudulent use of federal programs.

It has long been recognized as public policy to encourage citizens to report crimes. See *In re Quarles and Butler,* 158 U.S. 532, 535-36 (1895). The Tenth Circuit has stated "[i]t is public policy . . . everywhere to encourage the disclosure of criminal activity." *Lachman v. Sperry-Sun Well Surveying Company,* 457 F.2d 850, 853 (10th Cir. 1972). The Kansas Legislature's provision for an "informer's privilege," K.S.A. 60-436, is "based upon sound public policy to encourage those who have knowledge of crime to come forward and give information to law enforcement officers without fear of disclosure." *State v. Cohen,* 229 Kan. 65, 69, 622 P.2d 1002 (1981).

Corruptly influencing a witness by attempting to deter the witness from giving evidence is a felony. K.S.A. 21-3806. We held in *State v. Reed,* 213 Kan. 557, 559, 516 P.2d 913 (1973), that

"a person who has knowledge of facts out of which a criminal prosecution *might* arise is a 'witness' within the meaning of the statute." (Emphasis added.) The statute is thus sufficiently broad to encompass Dr. Morsch's alleged attempt to coerce Palmer to remain silent about her knowledge of Medicaid fraud at AFC.

Several jurisdictions have provided common-law "whistle-blower" protection for employees discharged for reporting illegal activity. See, *e.g., Vermillion v. AAA Pro Moving & Storage,* 146 Ariz. 215, 704 P.2d 1360 (1985) (employee told customer of employer theft of customer's property); *Palmateer v. International Harvester Co.,* 85 Ill. 2d 124, 421 N.E.2d 876 (1981) (employee reported to police theft of screwdriver by co-employee); *Kalman v. Grand Union Co.,* 183 N.J. Super. 153, 443 A.2d 728 (1982) (pharmacist reported to State Board of Pharmacy employer's plan to violate state pharmacy rules); *Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367 (9th Cir. 1984) (employee reported to California health officials shipment of adulterated milk); *Shaw v. Russell Trucking Line, Inc.,* 542 F. Supp. 776 (W.D. Pa. 1982) (employee notified police that employer's trucks were overloaded in violation of state law).

Public policy requires that citizens in a democracy be protected from reprisals for performing their civil duty of reporting infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare. Thus, we have no hesitation in holding termination of an employee in retaliation for the good faith reporting of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials (whistle-blowing) is an actionable tort. To maintain such action, an employee has the burden of proving by clear and convincing evidence, under the facts of the case, a reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and the employee was discharged in retaliation for making the report. However, the whistle-blowing must have been done out of a good faith concern over the wrongful activity reported rather than from a corrupt motive such as malice, spite, jealousy or personal gain.

The second issue in this appeal is whether Palmer's petition stated viable causes of action for fraud and detrimental reliance. Palmer alleged Coulter stated the group wanted an employee who would not be "easily manipulated by the individual doctors." Coulter also told her she would have "very limited responsibility for patient care and would be primarily responsible for management and bringing the lab up to certification standards." In a separate paragraph of her petition, Palmer then stated:

"4. Based upon the inducements and representations of Mr. Coulter and the defendants, which inducements and representations were known or should have been known to be false, the plaintiff left her job with the independent medical lab and began work at AFC on August 18, 1987."

Later in the petition, Palmer alleged she was fired for "performing her job as was represented she should when hired."

Neither appellant's petition nor brief state what fraudulent inducements appellant refers to. There is no indication Palmer was given different responsibilities than represented for patient care and laboratory management. It could be implied from later events that it was falsely represented to her that she was expected to be a person who would not be easily manipulated. It is not, however, explained how the representation induced her to take the job. Circumstances alleged to constitute fraud must be stated with particularity in the petition. K.S.A. 60-209(b); *Price v. Grimes,* 234 Kan. 898, 903, 677 P.2d 969 (1984).

We hold appellant's petition does not allege fraud with sufficient particularity to support her claims of fraud and detrimental reliance.

The judgment of the trial court is reversed on the issue of retaliatory discharge and affirmed on the claims of fraud and detrimental reliance. This case is remanded for further proceedings consistent with this opinion.