**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 3 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LISA JANE GRAHAM,

      Plaintiff - Appellant,

      v.

PHILIPS LIGHTING COMPANY, a
division of North American Philips
Corporation (by serving the Corporation
Company, 515 S. Kansas Avenue,
Topeka, KS 66603),

      Defendant - Appellee.

No. 96-3119

D. Kansas

(D.C. No. 95-4016-RDR)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **HOLLOWAY**, and **ANDERSON**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of this

appeal.  See Fed. R. App. P. 34 (a); 10th Cir. R. 34.1.9.  This cause is therefore ordered

submitted without oral argument.

---

      [*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Lisa Jane Graham appeals the district court's grant of summary judgment in favor of Philips Lighting Co. She contends that the district court erred in concluding that Philips had not fired her for being a whistle-blower.[1] We affirm.

## BACKGROUND

Philips operates a plant which produces florescent lamps in Salina, Kansas. On September 23, 1993, Graham was working on the production line as a lamp group operator, a position which she had held for five or six years. Glenn Boyd, the master group lineman responsible for keeping the line running, approached Graham and told her he needed her to "make a hole" in the line.[2] Although this was a task which she had performed on numerous other occasions, Graham believed that Boyd was harassing her. Instead of performing the requested task, Graham walked to the water fountain.[3] Her failure to perform the task caused lamps to pile up on the conveyor belt.

As Boyd later wrote in a report about the incident:

Lisa left her work station and walked to water fountain (without communicating such). When I haled her that I needed her at her work

---

[1]Graham does not appeal the court's adverse ruling on her Title VII sex discrimination claim.

[2]Boyd wanted to change an exhaust hose. In order that such maintenance can be performed without shutting down, an employee/operator "makes a hole" by removing lamps from the conveyor belt.

[3]Graham contends that she went to the water fountain to look around the plant for the supervisor to complain about Boyd's "make work" request.

station -- she responded by walking very slowly back . . . . Even when she made it back, she failed to help with skidding lamps which caused a Lehr loader pile up -- causing 2 min[ute]s of down time and the danger of flying glass.

Appellee's Supp. App. Vol. I at 33. Graham contends that Boyd was throwing the lamps on the floor as she returned.[4] She states that she shut down the conveyor belt to manage the pileup. As soon as the production line was back in order, Boyd left to write the above report and to speak with supervisor Steven Grospitch about the incident. Appellee's Supp. App. Vol. II at 194. Graham remained at her position on the line.

After speaking with Boyd, Grospitch called Graham into his office. Graham contends that she told Grospitch that Boyd had been harassing her, and that he had been throwing lamps. Grospitch called employee relations manager Rick Brown, following which he sent Graham home with instructions to return the next day for a meeting with specified supervisory and management personnel. Grospitch then investigated by speaking to the only other employee in the area where the incident occurred.

Graham appeared the next day as instructed. At the meeting, management advised her that she was being terminated for the following reasons:

1.      A repeated, documented history of harassment to and non-cooperation with coworkers and supervision.

---

[4]The pretrial order sets forth Graham's factual contention as follows: "When [Graham] returned to her position, Mr. Boyd was throwing lamps on the floor and the lamps were breaking and glass was being scattered around the work area." Appellant's App. at 11.

2. In deliberately leaving your assigned work station and work area without first getting relief you:
   A. Willfully hampered production causing additional downtime and loss of product valued at approximately $150.00;
   B. Could have caused serious damage to company equipment and you jeopardized your coworkers job security;
   C. Created a serious potential safety situation for your coworker.

Appellee's Supp. App. Vol. I at 31. Graham concedes that her conduct in leaving the line violated Philips' work rules. Appellee's Supp. App. Vols. I-II at 17-18, 95-96, 99-100, 112. Nonetheless, she contends that she was not discharged for the stated reasons, but, rather, that she was discharged for blowing the whistle on Boyd's throwing lamps.

**DISCUSSION**

We review de novo the grant of summary judgment, applying the same legal standards used by the district court pursuant to Fed. R. Civ. P. 56(c). Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir.1996). We examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment, Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990), and we apply the burden and standard appropriate to the particular claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254-55 (1986). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Kaul, 83 F.3d at 1212.

-4-

In order to maintain her tort action for retaliatory discharge for whistle-blowing under Kansas law, Graham has the burden of proving by clear and convincing evidence that a reasonably prudent person would have concluded that 1) Boyd was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety and the general welfare; 2) Philips knew of Graham's reporting such violation prior to discharging her; and 3) Graham was discharged in retaliation for reporting Boyd's violation. Palmer v. Brown, 752 P.2d 685, 690 (Kan. 1988). Additionally, Graham's whistle-blowing must have been motivated out of a good faith concern about the wrongful activity, rather than from malice, spite, jealously, or personal gain. Id.

We agree with the district court's conclusion that Graham produced no evidence from which a reasonable person could conclude that Boyd's alleged conduct affected public concern.[5] Taking her version of the facts as true, we find no showing that public health, safety, or general welfare was implicated by the incident Graham reported.[6] See Herman v. Western Financial Corp., 869 P.2d 696, 705 (Kan. 1994) (finding that a violation of internal loan policies, guidelines or underwriting standards of a savings and

_____

[5]In fact, Graham does not contest this portion of the district court's ruling. Rather, her appeal focuses on the second basis for the court's ruling, that she failed to present sufficient evidence to show that she was discharged in retaliation for reporting Boyd's conduct.

[6]For example, Graham does not claim that Boyd's actions constituted an assault or battery or that anyone was in danger of being hit or cut by the lamps.

loan association does not constitute a violation of "rules, regulations or the law pertaining to public health, safety and the general welfare").

Moreover, even if Graham had made the threshold showing regarding public concern, she has not shown the necessary nexus between her discharge and her reporting of the incident. Rather, as the district court correctly noted, the record fully supports the conclusion that Graham was discharged for cause.

> The uncontroverted evidence in this case overwhelmingly demonstrates that plaintiff was discharged on September 24, 1994 for her behavior on September 23, 1994, and her past behavior as an employee. As noted previously, plaintiff has admitted that she engaged in wrongful behavior when she left the production line to get a drink of water after she was requested to perform a task. Moreover, she has not challenged her prior actions as an employee which also formed a basis for termination. Plaintiff's termination did indeed occur close in time after the alleged "whistleblowing," but it also occurred just after an incident in which plaintiff acknowledges that she engaged in wrongful conduct. Thus, any inference to be drawn from the timing of the termination is negated by the plaintiff's admission of her wrongful conduct.

Appellant's App. at 65.

Accordingly, for substantially the same reasons stated therein, the order of the district court is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge
