David **FLENKER**, Plaintiff,

v.

**WILLAMETTE INDUSTRIES, INC.**, Defendant.

No. 95–2480–JWL.

United States District Court, D. Kansas.

Oct. 4, 1999.

Dennis E Egan, The Popham Law Firm, Kansas City, MO, Stephen J. Dennis, Overland Park, KS, Brian F. McCallister, The McCallister Law Firm, P.C., Kansas City, MO, for David Flenker, plaintiff.

Rody P Biggert, Andrew M Altschul, William F Dugan, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Michael J. Abrams, Rosalee M. McNamara, Lathrop & Gage L.C., Kansas City, MO, for Willamette Industries, Inc., defendant.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

Plaintiff David Flenker filed this diversity suit against defendant Willamette Industries, Inc. for retaliatory discharge. According to plaintiff, defendant terminated his employment in retaliation for plaintiff's reporting alleged safety violations to the Occupational Safety and Health Administration (OSHA). This matter is presently before the court on defendant's motion for summary judgment (doc. # 34) and defendant's motion for partial summary judgment on plaintiff's claim for punitive damages (doc. # 96). As set forth in more detail below, defendant's motions are denied.

## I. Facts

The following facts are either uncontroverted or related in the light most favor-

able to plaintiff, the nonmoving party. In 1990, plaintiff began his employment with defendant, a corrugated paper manufacturer, as a mechanic. During the time relevant to this lawsuit, Steve Harper was plaintiff's immediate supervisor. According to plaintiff, he enjoyed a "very good" working relationship with Mr. Harper. During this same period, Dale McGinnis served as defendant's plant manager.

The first several years of plaintiff's employment passed without incident. On February 7, 1994, Jim Beshears, a temporary supervisor, asked plaintiff to fix the corrugator downstacker, a particular piece of machinery in defendant's plant. According to plaintiff, fixing the machine required plaintiff to work underneath the downstacker. At the time, according to plaintiff, the downstacker was missing three out of four safety legs and had a full load of paper product stacked on top of it. Plaintiff advised Mr. Beshears that he believed the machine, in its current condition, was dangerous and that he would not fix the machine unless the product was removed from the top of the machine. The product was removed from the top of the machine and, although plaintiff was still uncomfortable with the lack of safety legs on the downstacker, he agreed to fix the machine. Apparently, plaintiff turned the wrong switch while attempting to fix the machine, causing the machine to shut down for several hours. As a result of his dispute with Mr. Beshears, and his causing the downstacker to shut down, plaintiff received a disciplinary warning from Steve Harper.

The next day, plaintiff received a three-day disciplinary suspension for failing to repair certain equipment properly. Due to pressing business, however, defendant required plaintiff to work during his "suspension." Plaintiff, however, wanted to take the three days off because, according

to plaintiff, he was still upset about the downstacker incident.

Plaintiff testified that, shortly after the downstacker incident, he "made it blatantly known at work" that he intended to file a complaint with OSHA about a variety of safety issues in the workplace. Plaintiff further testified that he notified Steve Harper of his concerns about the working conditions in defendant's facility and specifically advised Mr. Harper that he intended to file a complaint with OSHA. According to plaintiff, Mr. Harper told plaintiff that "it was [plaintiff's] right" to file such a complaint. Plaintiff does not recall whether he advised Dale McGinnis of his intention to file an OSHA complaint.

On Thursday, February 10, 1994, plaintiff obtained a note from his psychologist in which his psychologist recommended that plaintiff be given a three-day weekend "to unwind" in light of current stressors in the workplace. After plaintiff's shift that day, he left the note on Mr. Harper's desk. Plaintiff made no other effort to contact Mr. Harper about taking time off. He did not report to work for his Friday night shift or his Sunday night shift.[1]

At some point over the weekend, plaintiff began hearing rumors that his employment with defendant had been terminated. Accordingly, plaintiff phoned Mr. Harper prior to the beginning of his shift on Monday, February 14, 1994. When plaintiff asked Mr. Harper whether he "still had a job," Mr. Harper advised plaintiff that he did, but that he was suspended until further notice for taking time off without permission. On that same day, plaintiff filed a complaint with OSHA regarding several allegedly unsafe working conditions in defendant's facility, including the corrugator downstacker.[2] On February 16, plaintiff had a meeting with Mr. McGinnis in which he advised Mr. McGin-

---

1. Plaintiff was not scheduled to work Saturday night.

2. It is unclear from the record whether plaintiff filed his OSHA complaint before learning of his suspension or whether he filed the complaint after his discussion with Mr. Harper.

nis that he had been forced to work underneath the downstacker without any safety supports and that he had suffered an anxiety attack because of it. The next day, on February 17, 1994, OSHA conducted a surprise investigation of defendant's plant and specifically inspected the corrugator downstacker. According to Mr. McGinnis, the OSHA investigator specifically told him that a complaint had been filed about the corrugator downstacker, among other things. The investigation revealed that some of plaintiff's complaints were valid, while others were invalid. Although the record reveals that OSHA issued defendant a Citation and Notification of Penalty, the terms of that citation and penalty are not in the record before the court.

On February 21, 1994, Mr. McGinnis sent plaintiff a letter setting forth the reasons for and length of plaintiff's suspension. According to Mr. McGinnis, plaintiff's suspension would last from Monday, February 14, through Friday, February 25, 1994. During this time, Mr. McGinnis reviewed plaintiff's personnel file and spoke with plaintiff's supervisors about plaintiff's performance. Based on plaintiff's work record, Mr. McGinnis decided that plaintiff should be tested for drugs in accordance with defendant's drug and alcohol policy.[3] Mr. McGinnis admitted, however, that he had never received any indication that plaintiff had used drugs or alcohol in the workplace or that plaintiff had ever reported to work under the influence of drugs or alcohol.

On February 23, 1994, plaintiff was notified that he would be required to submit to a drug test. Plaintiff did not object to the test. He tested positive for marijuana. According to defendant's drug and alcohol testing policy, an employee who tests positive for drugs or alcohol is required to participate in a rehabilitation program and sign a rehabilitation agreement. The policy further states that an employee who refuses to participate in a rehabilitation program will be discharged. Pursuant to this policy, plaintiff signed a rehabilitation agreement and, on the same day, enrolled in an employee assistance program (EAP). Defendant's EAP counselor, however, informed plaintiff that he "probably" would have to stop taking his prescription medication[4] in order to participate in the particular program to which plaintiff had been assigned. According to defendant, Mr. McGinnis advised plaintiff that other EAP programs were available to plaintiff that would not require plaintiff to stop taking his medication. According to plaintiff, he was never advised about the availability of such programs. Because plaintiff believed that he could not function properly without his medication, and because he believed that participation in an EAP program would require him to stop taking his medication, he never reported to the EAP program to which he was initially assigned. Despite repeated warnings from Mr. McGinnis that his failure to attend an EAP would result in his discharge, plaintiff did not attend an EAP program. Mr. McGinnis terminated plaintiff's employment on March 11, 1994 for allegedly failing to comply with his rehabilitation agreement. In his deposition, Mr. McGinnis was unable to recall any other employees, during the last ten years, who were discharged for failing to complete a rehabilitation program.

## II. Procedural History

Defendant initially moved for summary judgment in 1996. At that time, defendant argued that plaintiff's retaliatory discharge claim was precluded because section 11(c) of the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 660(c), provided him an adequate alternative remedy. Defendant also argued that plaintiff's claim failed on the merits and that, at a mini-

---

**3.** Pursuant to defendant's drug testing policy, any employee "whose job performance over time indicates deterioration" may be tested for drugs or alcohol with the approval of the plant manager.

**4.** Plaintiff has been diagnosed with ADHD (attention deficit/hyperactivity disorder) and takes the prescription medication for that disorder.

mum, summary judgment should be granted on plaintiff's claim for emotional distress damages. Judge Kathryn H. Vratil of this district granted defendant's motion for summary judgment on the grounds that section 11(c) provided plaintiff an adequate alternative remedy. *See Flenker v. Willamette Indus., Inc.*, No. 95–2480–KHV, 1996 WL 331115 (D.Kan. May 28, 1996). She did not address the merits of defendant's other arguments. *See id.* at *3 n. 1.

Plaintiff appealed the decision. The Tenth Circuit certified to the Kansas Supreme Court the question of whether the remedy provided by section 11(c) of OSHA precluded the filing of a retaliatory discharge claim under Kansas law. The Kansas Supreme Court, under the facts submitted to it in the Circuit's certification, answered "no." *See Flenker v. Willamette Indus., Inc.*, 266 Kan. 198, 967 P.2d 295 (1998). Applying the Kansas Supreme Court's answer, the Circuit held that section 11(c) of OSHA did not preclude plaintiff's retaliatory discharge claim and vacated the grant of summary judgment to defendant. *See Flenker v. Willamette Indus., Inc.*, 162 F.3d 1083 (1998).

On remand, the case was transferred to the undersigned judge. The court has permitted the parties to supplement their 1996 papers with any additional recent authority. Those supplemental papers are now before the court and, thus, the court is prepared to address those arguments made by defendant in support of its motion for summary judgment that were not addressed in 1996. In addition, defendant has filed recently a motion for summary judgment on plaintiff's claim for punitive damages. Plaintiff has had an opportunity to respond and, thus, the court will address this motion as well.

## III. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

**1266**

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

**IV. Discussion**

Plaintiff claims that defendant terminated his employment in retaliation for his filing a complaint with OSHA about certain working conditions in defendant's facility. In its motion for summary judgment, defendant argues that plaintiff cannot establish the elements of a retaliatory discharge claim under Kansas law or, in the alternative, that summary judgment is appropriate on plaintiff's claim for emotional distress damages. By separate motion, defendant seeks summary judgment on plaintiff's claim for punitive damages. The court addresses each of defendant's arguments in turn and, as set forth in more detail below, rejects those arguments.

*A. Plaintiff's Retaliatory Discharge Claim*

 Kansas is an "employment at will" state. *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779 (1976). Generally, "in the absence of an express or implied contract between an employee and employer regarding the duration of employment, either party is free to end the employment at any time for any reason." *Palmer v. Brown*, 242 Kan. 893, 896, 752 P.2d 685 (1988) (citing *Johnston v. Farmers Alliance Mut. Ins. Co.*, 218 Kan. 543, 546, 545 P.2d 312 (1976)). In *Palmer*, however, the Kansas Supreme Court recognized the tort of retaliatory discharge as a public policy exception to the employment-at-will doctrine:

Public policy requires that citizens in a democracy be protected from reprisals for performing their civil duty of reporting infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare. Thus, we have no hesitation in holding termination of an employee in retaliation for the good faith reporting of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials (whistle-blowing) is an actionable tort.

*Id.* at 900, 752 P.2d 685. To establish this claim, an employee has the burden of proving by clear and convincing evidence, under the facts of the case, that a reasonably prudent person would have concluded the employee's employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; that the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and that the employee was discharged in retaliation for making the report. *Id.* In addition, the "whistle-blowing" must have been done out of a good faith concern over the wrongful activity reported rather than a from a corrupt motive such as malice, spite, jealousy or personal gain. *Id.*

According to defendant, plaintiff has failed to establish each element of his retaliatory discharge claim. With respect to the first element of plaintiff's claim, defendant asserts only that "the results of the OSHA inspection ... undermines plaintiff's ability to establish that a reasonable prudent person would have concluded there was a safety violation." This argument is meritless. As described above, many of the specific complaints made by plaintiff to OSHA were found to be valid. As a result, OSHA issued defendant a citation and assessed monetary fines. Clearly, OSHA found that certain violations had taken place. At a minimum, then, genuine issues of material fact exist with respect to whether a reasonable person would have concluded that safety violations were present in defendant's facility.

Defendant next contends that plaintiff has failed to establish the "knowledge" element of his claim. Specifically, defendant argues that plaintiff cannot establish

by clear and convincing evidence that defendant knew he had filed or intended to file a complaint with OSHA at the time the discharge decision was made. The court disagrees. It is uncontroverted that Dale McGinnis made the decision to terminate plaintiff's employment. While plaintiff may not have expressly indicated to Mr. McGinnis his intent to file a complaint with OSHA, he did advise Mr. McGinnis that he had been forced to work underneath the downstacker without any safety supports and that he had suffered an anxiety attack because of it. The very next day, OSHA conducted an investigation of defendant's plant and specifically inspected the downstacker. Moreover, according to Mr. McGinnis, the OSHA investigator specifically told him that a complaint had been filed about the downstacker, among other things. In light of this evidence, a reasonable jury could conclude that Mr. McGinnis knew that plaintiff had filed a complaint with OSHA. Summary judgment on this basis is denied.

■ Defendant also argues that it is entitled to summary judgment because plaintiff cannot establish the requisite causation. According to defendant, the evidence undisputedly demonstrates that plaintiff was discharged not in retaliation for his complaints to OSHA, but for failing to participate in a drug rehabilitation program. To recover for retaliatory discharge, an employee must prove that the discharge was "based on" an intent to retaliate; the employee need not prove that retaliation was the sole motive for the discharge. *See Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 146–48, 815 P.2d 72 (1991).

Plaintiff has presented evidence of causation sufficient to permit a reasonable jury to find that Mr. McGinnis discharged plaintiff in retaliation for plaintiff's reporting alleged safety violations to OSHA. Just days after the OSHA investigation (and corresponding monetary fines), Mr. McGinnis suddenly decided to test plaintiff for illegal drug use. This decision was made while plaintiff was not even in the workplace—he was still on suspension. Moreover, Mr. McGinnis admitted that he had never received any indication that plaintiff had used drugs or alcohol in the workplace or that plaintiff had ever reported to work under the influence of drugs or alcohol. Rather, Mr. McGinnis testified, without explanation, that plaintiff's "overall work record" suggested a need to test plaintiff for drug use. In its papers, however, defendant has not identified any deficiency in plaintiff's work performance prior to February 1994 other than five isolated warnings between September 1992 and November 1993. In sum, the circumstances surrounding defendant's decision to test plaintiff for drug use are sufficiently suspicious to raise an inference of retaliatory motive.

Similarly, the circumstances surrounding plaintiff's discharge are sufficient to raise an inference of retaliatory motive. According to plaintiff, he had every intention of complying with his rehabilitation agreement, including participation in an EAP program. Viewing the evidence in the light most favorable to plaintiff, he did not attend his assigned program because of a genuine concern that he would have to stop taking his prescription medication. Although defendant asserts that other programs were available that would not require plaintiff to stop taking his medication, plaintiff testified that defendant did not advise him about such programs. From these facts, a reasonable jury could infer that defendant, instead of helping plaintiff find an appropriate EAP program, used this opportunity to terminate plaintiff's employment in retaliation for plaintiff's complaints to OSHA. This conclusion is further supported by Mr. McGinnis' inability to recall any other employees, in the past ten years, who were discharged for similar reasons.

■ Finally, defendant maintains that summary judgment is appropriate because plaintiff did not contact OSHA in good faith. In support of this argument, defendant highlights that plaintiff did not con-

tact OSHA until February 14, 1994—nearly one week after he was required to work underneath the downstacker and only after he knew that his job might be in jeopardy for not reporting to work. This delay, according to defendant, supports an inference of plaintiff's improper motive in filing the complaint with OSHA. While these facts may support such an inference, a reasonable jury could draw another inference from the facts when those facts are viewed in the light most favorable to plaintiff. According to plaintiff's evidence, plaintiff complained to OSHA because he was genuinely upset about the condition of the downstacker and other conditions in the workplace. Moreover, plaintiff testified that he discussed with Steve Harper his concerns about the working conditions in defendant's facility and specifically advised Mr. Harper that he intended to file a complaint with OSHA. According to plaintiff's recollection, this discussion took place before plaintiff's "unexcused" three-day weekend in mid-February and, thus, before plaintiff had any concerns that his job might be in jeopardy. In essence, then, plaintiff's motivation is a question of fact for the jury to decide. *See Byle v. Anacomp, Inc.*, 854 F.Supp. 738, 747 (D.Kan. 1994).

In sum, the court concludes that genuine issues of material fact exist regarding each element of plaintiff's retaliatory discharge claim. For the reasons described above, summary judgment on plaintiff's claim is denied.

### B. Plaintiff's Claim for Damages Based on Emotional Distress

█ Defendant moves for summary judgment on plaintiff's claim for emotional distress damages incurred as a result of his discharge. In support of its motion, defendant argues that plaintiff has failed to demonstrate that he suffered any physical injury—an element that, according to defendant, is required under Kansas law. Although defendant acknowledges that no physical injury need be shown in cases where "the injurious conduct is willful and wanton and the defendant acts with intent to injure," defendant contends that plaintiff has failed to establish that the conduct here falls within the exception to the physical injury requirement. As set forth below, defendant's argument is without merit and its motion for summary judgment on this issue is denied.[5]

█ It is well settled under Kansas law that "there can be no recovery for emotional distress caused by the *negligence* of another unless accompanied by or resulting in physical injury." *Humes v. Clinton*, 246 Kan. 590, 598, 792 P.2d 1032 (1990) (citing cases) (emphasis added). Where the plaintiff alleges that the defendant acted in a willful or wanton manner, or with the intent to injure, then the physical injury requirement does not apply. *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 274, 662 P.2d 1214 (1983). Plaintiff here claims that defendant terminated his employment in retaliation for filing a complaint with OSHA. Retaliatory discharge is an intentional tort. *See Arnold v. Air Midwest, Inc.*, 877 F.Supp. 1452, 1467 (D.Kan.1995). Many courts have simply presumed that a plaintiff alleging retaliatory discharge under Kansas law could recover damages for emotional distress, without addressing whether any physical injury was sustained by the plaintiff. *See, e.g., Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1300 (10th Cir.1998)

---

**5.** Defendant argues that its motion for partial summary judgment on the issue of emotional distress damages should be granted as unopposed because plaintiff did not respond to this argument back in 1996 and, according to defendant, has waived his opportunity to do so now. The court disagrees. Significantly, Judge Vratil did not grant summary judgment on this issue. If defendant believed it was entitled to summary judgment on the issue of emotional distress damages because the motion was unopposed, it should have moved Judge Vratil to alter or amend the judgment at that time. It failed to do so and, thus, plaintiff's failure to respond back in 1996 is not relevant to the posture of the case before the court today.

(district court properly instructed jury on the availability of damages caused by retaliatory discharge under Kansas law, including damages for embarrassment, humiliation and emotional distress). At least one court, however, has expressly concluded that Kansas would permit a plaintiff, in an action for retaliatory discharge, to recover emotional distress damages in the absence of physical injury. *See Southwest Forest Industries, Inc. v. Sutton,* 868 F.2d 352, 356 (10th Cir.1989) (stating that it "had no reason to disagree" with the district court's conclusion that Kansas would permit emotional distress damages in a retaliatory discharge action even absent a showing of physical injury). Thus, if plaintiff proves his claim at trial, he is entitled to recover damages for emotional distress without demonstrating any physical injury, so long as any award for emotional distress is supported by the evidence at trial. Defendant's motion for summary judgment is denied.

### C. Plaintiff's Claim for Punitive Damages

Defendant also moves for summary judgment on plaintiff's claim for punitive damages. According to defendant, the undisputed facts show that defendant could not have acted wantonly, willfully or maliciously because plaintiff was responsible for his discharge by failing to participate in the rehabilitation program. This argument, however, is based solely on defendant's version of the facts. As set forth above, genuine issues of fact exist with respect to the reasons for plaintiff's discharge. If the jury believes plaintiff's version of the facts, it could infer that defendant acted with malice or that its conduct was wilful. Defendant's motion for summary judgment on plaintiff's claim for punitive damages is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 34) and defendant's motion for partial summary judgment on plaintiff's claim for punitive damages (doc. # 96) are **denied**.

**IT IS SO ORDERED.**