**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHAEL G. DRURY,

       Plaintiff - Appellant,

v.

BNSF RAILWAY COMPANY,

       Defendant - Appellee.

No. 15-3021
(D. Kan.)
(D.C. No. 2:13-CV-02282-JTM)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, Chief Judge, **LUCERO**, and **BACHARACH**, Circuit
Judges.

Michael Drury brought this employment discrimination action against his
former employer, BNSF Railway Company. Drury alleges that his demotion and
termination were the product of (1) race discrimination on account of his Native
American ancestry and (2) retaliation in violation of Kansas public policy.
BNSF, however, claims to have demoted and fired Drury because of his poor
performance.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

The district court granted summary judgment for BNSF, and Drury appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

## I. Background

BNSF hired Drury in 1996 as a signalman. Drury held a variety of positions within that department, and during his first ten years with the company, he received excellent performance reviews, bonuses, and promotions. Throughout his tenure, he was also known as an advocate for Native American interests among employees and potential employees of BNSF. Drury was involved with the American Indian affinity group at BNSF, and was sent as a representative to the Choctaw Nation to speak about employment opportunities. He mentioned his race on his public employee profile and often spoke with his coworkers and supervisors about his heritage.

After several years with the railroad, Drury was promoted to Signal Maintainer and then to Retarder Yard Specialist. In 2001, he became a supervisor of the signal department, and in 2005 became the director of special projects within signal. In 2006, BNSF made Drury Senior Manager of Technical Training at the Technical Training Center (TTC) at Johnson Community College. In this capacity, he reported to Jeffrey Abbott, general director of the TTC.

Drury raised allegations of race and age discrimination against Abbott in 2006 based on comments Abbott had made to Drury and others. He complained directly to Abbott, and also to other BNSF officials. After that, in the first

negative performance review of his career, Drury received an overall "needs improvement" from Abbott for the year 2006. Drury filed a formal written appeal of this review in January 2007, alleging that Abbott's review was retaliation for Drury's complaints. After an investigation, BNSF fired Abbott in March and revised the negative performance review to an overall rating of "on target". But management left Drury's needs improvement rating in the leadership category because he had "demonstrated multiple actions that have been detrimental to the TTC mission," such as "not demonstrating support for leadership positions with which you may not personally agree." Dist. Ct. at 8.

Because of this rating, management informed Drury he would be placed on a Performance Improvement Plan (PIP) for leadership. Drury complained to human resources that the PIP was continuing discrimination in violation of both the law and BNSF policy. He sent a supplemental letter to the EEOC, and also emailed his complaints to BNSF's chief operating officer. The COO requested the director of human resources meet with Drury about his concerns. After this meeting took place, the director of human resources wrote to the COO that "Mike's behavior has crossed the line: he is very combative, arrogant and his compliance with [his supervisor]'s instructions is malicious at best." Dist. Ct. at 9. Drury filed a Charge of Discrimination alleging retaliation with the EEOC in March 2007 and later received a right to sue letter. In April 2007, Drury completed the PIP.

In August 2007, Scott Schafer replaced Abbott as the new director of the TTC. Schafer issued Drury an on target rating for his year-end review for 2007. Schafer also rated Drury on target for his mid-year and year-end reviews in 2008 and 2009. In 2010, Schafer rated Drury needs improvement in leadership because of his handling of reporting expenses, but he still received an on target overall. In July 2010, BNSF hired Lynne Joplin as director at the TTC. Drury began reporting to Joplin instead of Schafer.

In November 2010, Drury learned that one of his subordinates had used BNSF funds to purchase items for personal use. He reported this conduct and expressed an understanding that BNSF's failure to detect this misuse of funds could lead to inaccurate corporate tax returns. He also told BNSF that he thought this type of behavior was not uncommon at the company. The initial fraud investigation report was given to BNSF executives who were aware of Drury's earlier discrimination and retaliation complaints. Drury alleges that the resulting company audit "made a lot of people look bad," including Schafer and Jim LeVere, the Assistant Vice President of Signal. Dist. Ct. at 12. But he also admits that neither Schafer nor LeVere ever indicated they were upset with him. And Drury acknowledges Joplin commended him in his performance review for his detection and reporting of the fraud. Joplin completed Drury's 2010 year-end performance evaluation, which rated him on target overall and in leadership.

Drury received a negative mid-2011 review. Joplin sought feedback for this review from Greg Britts and Jim LeVere, both of whom expressed concerns about Drury's performance. They said they were dissatisfied with his customer service and that he showed little innovation in updating training programs. LeVere told Joplin he wanted Drury to be rated needs improvement. Joplin thought this request to issue a specific rating was both unusual and inappropriate, so she reported LeVere to human resources. Joplin then solicited feedback from Drury's subordinates, including several who had been implicated in the fraud he had previously reported to the company. Joplin reviewed all these responses and rated Drury needs improvement in leadership. Among other things, she specifically noted that he had bad relationships with his subordinates, had incorrectly instructed an employee to charge operating expenses to capital expenses, had not identified his own development goals, and had not effectively managed a project he was supposed to be running.

After this negative review, Schafer and Joplin worked on a performance timeline detailing Drury's poor performance. It is not clear when this timeline was created, but Joplin received a draft on August 2, 2011. On August 9, she emailed the timeline to Schafer. This timeline included a needs improvement rating in 2006, without detailing that the rating was later revised to on target. In late August, Joplin met with Drury. She offered him the choice between a demotion or a new PIP. Because the demotion came with a pay cut and bonus

reduction, Drury chose the PIP. Joplin placed Drury on the ninety-day PIP, which included six areas for improvement. Joplin testified she did not know of Drury's earlier EEOC charges, but admits she did know of his Native American heritage. Drury told Joplin he felt the PIP was designed to terminate him, and he claims Joplin agreed.

On August 31, 2011, LeVere sent an email to his own supervisor suggesting Drury be demoted. And in October 2011, Drury was involuntarily demoted to Engineer Interlocking Systems in LeVere's signal department. He reported directly to Dwight Golder. The new position paid ten percent less than Drury's old job and had a lower bonus. In his 2011 year-end review, Golder rated Drury "needs improvement" overall. Drury never received a written copy of his review. Golder never warned Drury his job was at risk. Although it is BNSF policy to place employees on PIPs before termination, Drury was not placed on a PIP in 2011. In January 2012, LeVere emailed Golder's supervisor instructing him to prepare documents for Drury's termination. Drury was terminated on January 25, 2012. Although Drury could no longer hold a managerial role at BNSF, he was eligible to remain as a scheduled employee. But because Drury had not paid his union dues during his salaried tenure, he could not return to a non-exempt craft position.

After receiving his EEOC notice of right to sue, Drury filed suit in federal court. He sought a jury trial on his claims of illegal demotion and termination

based on race and national origin discrimination and illegal retaliation for his complaints of discrimination under Title VII, 42 U.S.C. § 1981; age discrimination and illegal retaliation in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34; and retaliation in violation of Kansas public policy. The district court entered an order granting BNSF's motion for summary judgment on all claims.

## II. Analysis

We review the district court's grant of summary judgment de novo. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). We view the evidence and make all inferences in the light most favorable to the non-moving party. *Id.*

Drury challenges the district court's ruling on race and national origin discrimination in violation of Title VII and retaliation in violation of Kansas public policy.[1]

### A. Race or National Origin Discrimination

Drury alleges his termination was the product of intentional race discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. § 1981. A plaintiff seeking to prove race discrimination may do so by presenting direct evidence of discriminatory

---

[1] Because his opening brief did not raise an argument about retaliation in violation of the ADEA, we consider this claim waived. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011).

motivation, such as statements made by a supervisor showing racial bias.  *See*

*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).  In

the absence of direct evidence of racial discrimination, a plaintiff initially must

prove a prima facie case of discrimination based on race by showing "(1) he was a

member of a protected class; (2) he was qualified and satisfactorily performing

his job; and (3) he was terminated under circumstances giving rise to an inference

of discrimination."  *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir.

2004).

     After an employee has satisfied his burden of establishing a prima facie

case of discrimination, the burden of production shifts back to the employer to

"articulate some legitimate, nondiscriminatory reason" for its termination

decision.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Once

the employer has done so, the burden shifts back to the employee to show that the

proffered reason is pretextual.  *Id.* at 804.

     A plaintiff may establish pretext "by providing specific facts showing that

[the employer's] reasons for its decision are pretextual or racially motivated."

*Salguero*, 366 F.3d at 1176.  This may be done through a showing of "such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in

the employer's proffered legitimate reasons for its action that a reasonable

factfinder could rationally find them unworthy of credence and hence infer that

the employer did not act for the asserted non-discriminatory reasons."  *Jaramillo*

*v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005). Usually, a plaintiff shows pretext in one of the following ways: "(1) with evidence that defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action taken by the defendant under the circumstances; or (3) with evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." *Salguero*, 366 F.3d at 1176.

Here, Drury claims the district court erred by not considering discriminatory comments made by co-employees of BNSF. He claims these comments are sufficient to create an inference of discrimination by BNSF managers. But the majority of the racist comments Drury points to include statements by Jeffrey Abbott, Drury's former supervisor who was fired, and Jesus Quintero, Drury's former coworker. Because neither individual was involved in Drury's demotion or termination, their racist comments cannot be evidence of discriminatory animus in those decisions. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).

Drury argues Dwight Golder, who gave him a negative performance review and also was involved in the decision to terminate him, was another who harbored racial animus toward Native Americans. But in his deposition, Drury testified he had never heard Golder make any racist comments about Native Americans. The only evidence of Golder's alleged animus is an affidavit presented by Drury

-9-

himself for the first time in his opposition to the summary judgment motion in which he alleged he had heard Golder make a derogatory remark about Native Americans. The district court rejected the affidavit, finding it a sham filing that was plainly inconsistent with Drury's earlier deposition testimony that he had never heard Golder express animus toward Native Americans, and thus could not be evidence of discrimination. *See Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1218 (10th Cir. 2014). We agree that the court did not abuse its discretion in rejecting the affidavit.

Finally, Drury alleges both Schafer and Golder harbored bias against racial minorities generally. He claims to have heard them make racist statements about other minorities. Even assuming all Drury's allegations are true, none of the highlighted comments were about Drury or Native Americans. Instead, they are exactly the kind of isolated or ambiguous statements unrelated to the challenged action that we previously have held insufficient to create a jury issue. *See Cone*, 14 F.3d at 531 (finding negative comments made by a supervisor about older workers in general did not support an inference of age discrimination in the instant case).

Turning to Drury's arguments about indirect evidence of discrimination, neither party argues on appeal he did not make out a prima facie case of discrimination. Nor is there any dispute that BNSF met its burden of articulating

a legitimate basis for Drury's termination.[2]  But Drury has not shown sufficient evidence of pretext.

First, Drury's main argument about pretext is that four of his supervisors lied about their knowledge of his race.  Because we make all inferences in favor of the plaintiff at this stage, we assume that those BNSF supervisors did indeed know Drury was Native American.  But even if his supervisors lied about knowing Drury's race, there is no precedent for the idea that a falsely claimed lack of knowledge is enough to prove pretext.  Without any showing that such knowledge played a role in the decisions to demote or terminate Drury, or any evidence that BNSF's legitimate rationale for the demotion and firing was false, this claim fails.

Second, Drury argues his 2011 negative reviews were pretextual.  He contends his supervisors ensured his termination by giving him negative performance reviews based on inaccurate information.  Regarding his 2011 mid-year review, Drury argues Joplin ignored previous positive performance reviews and erroneously relied on other employees' observations.  As to his 2011 year-end

---

[2]  In his reply brief, Drury raises for the first time before this court the argument that BNSF failed to provide a legitimate, non-discriminatory reason for his termination.  He alleges BNSF's motion for summary judgment to the district court was insufficient, and BNSF first adequately explained its reasoning only in its reply to the response to the motion for summary judgment before that court.  But because Drury did not raise this issue in his opening brief in this court, we consider it waived.  *See State Farm Fire & Cas. Co. v. Mhoon,* 31 F.3d 979, 984 n.7 (10th Cir. 1994).

review, Drury alleges Golder also erroneously relied on other employees' observations, and also incorrectly relied on observations made about Drury's performance in his old position at TTC, rather than his post-demotion performance in signal.

Drury points to specifically documented admissions of his objectively good performance. But these documents cover only the period from 2007 to 2010. They do not rebut claims that Drury's work deteriorated after that period of time. And successful past performance does not support the conclusion that subsequent negative evaluations are pretextual. *Viola v. Philips Med. Sys. of North Am.*, 42 F.3d 712, 717–18 (2d Cir. 1994) (rejecting inference of discrimination or pretext from negative performance review after prior positive reviews); *see also Richardson v. Gallagher*, 553 F. App'x. 816, 825 (10th Cir. 2014). Even if we assume Drury has shown his 2011 reviews were incorrect, "[e]vidence that the employer should not have made the termination decision . . . is not sufficient to show that the employer's explanation is unworthy of credibility." *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 948 (10th Cir. 2011). In examining whether a negative review is pretextual, we examine "the facts as they appear to the person making the decision, not the plaintiff's subjective evaluation of the situation." *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013). Even if, as Drury alleges, his supervisors focused on negative comments and left out some of the positive observations about his work, so long as they honestly believed Drury

-12-

had engaged in a pattern of below-average performance and insubordinate behavior, the reviews are not discriminatory. Drury presents no evidence showing Joplin or Golder gave him bad performance reviews when they thought he deserved better ones. Without this showing, Drury cannot prove pretext.

The same analysis also applies to Drury's complaints about his performance timeline. Because Drury has presented no evidence the timeline reflected anything but the honest beliefs of its authors, the timeline does not show pretext.

Drury argues he never asked to be transferred out of the TTC, so this explanation for his demotion was pretext. While "our summary judgment standard requires us to view the facts in the light most favorable to the non-moving party, it does not require us to make unreasonable inferences in favor of the non-moving party." *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1187 (10th Cir. 2013). Evidence in the record supports BNSF's contention that Drury wanted to be transferred out of the department. He applied for over 100 positions outside of TTC, and told his supervisors he was seeking a way out of that department. Drury admitted in his testimony that he was actively attempting to leave his position. We therefore find Drury has not shown this explanation for his transfer was pretext for discrimination.

In sum, having considered all the evidence presented by Drury to satisfy his summary judgment burden, we do not find any genuine dispute of material fact as to pretext. Without a showing of pretext or evidence that he was discriminated

against based on his race, Drury cannot prevail on a claim of race discrimination. The district court did not err in granting summary judgment on the race discrimination claim.

## B. Retaliation

Drury also contends he was demoted and terminated in violation of Kansas public policy. The district court held against Drury on this count as well.

Under Kansas law, an employee has a cause of action for a wrongful discharge in violation of public policy when he can demonstrate that a "co-worker . . . was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and the employee was discharged in retaliation for making the report." *Palmer v. Brown*, 752 P.2d 685, 690 (Kan. 1988). An employee must satisfy this burden by "clear and convincing evidence." *Id.* Because it is often difficult to provide direct evidence of retaliatory animus, Kansas courts look to temporal proximity between the whistleblowing activity and the adverse employment action. *See Rebarchek v. Farmers Co-op. Elevator,* 35 P.3d 892, 899 (Kan. 2001). A period of more than four months between the two actions, without more, generally does not establish causation. *Conner v. Schnuck Mkts., Inc.,* 121 F.3d 1390, 1395 (10th Cir. 1997). Temporal proximity, plus evidence of satisfactory work performance and supervisor evaluations can sustain a claim.

*Boe v. AlliedSignal Inc.*, 131 F. Supp. 2d 1197, 1204 (D. Kan. 2001). Furthermore, proof of intervening positive employment actions cuts against an inference of causation. *Trujillo-Cummings v. Pub. Serv. Co.*, 1999 WL 169336, at *3 (10th Cir. Mar. 29, 1999).

Drury asserts that he was demoted and terminated because he reported the actions of another employee who had been defrauding the company. BNSF disputes only whether Drury was discharged in retaliation for making the report. We find the district court's decision justified under Kansas law.

First, the evidence in the record does not show Drury's superiors reacted negatively to his reporting of the fraud. Rather, as the district court found, they commended him for his actions at that time.

Second, Drury cannot make a circumstantial case based on temporal proximity. He reported the misconduct of his coworkers in November of 2010. He was demoted in October 2011 and fired in January 2012. These events did not occur closely enough in time to allow the court to infer that any adverse actions were caused by Drury's reporting of the fraud. Again, nowhere in the record does Drury point to any action or statement, at any time, by any decision maker that is critical of his reporting of his coworkers' fraud. Rather, Drury received a positive performance review after his report of the fraud, and he was taken off his PIP.

We affirm the district court's grant of summary judgment on Drury's Kansas public policy claim.

## III. Conclusion

We AFFIRM the district court's judgment.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Chief Judge