(10 P.3d 8)

No. 83,085

MATTHEW FOWLER, *Appellant*, v. CRITICARE HOME HEALTH SERVICES, INC., *Appellee.*

Opinion filed August 4, 2000.

*Sally A. Howard*, of Stevens & Brand, L.L.P., of Lawrence, for appellant.

*Michael E. Riling*, of Riling, Burkhead, & Nitcher, Chartered, of Lawrence, for appellee.

Before MARQUARDT, P.J., BEIER, J., and JOHN W. WHITE, District Judge, assigned.

BEIER, J.: This is an appeal of a wrongful termination case. Plaintiff-appellant Matthew Fowler seeks review of the district court's initial decision to grant summary judgment in favor of defendant-appellee Criticare Home Health Services (Criticare) and its subsequent decision to modify that ruling, again in favor of Criticare.

Fowler began working for Criticare in July 1992, and, from April 1995 until his termination, he was the company's shipping manager. On August 6, 1996, Scott Moore, the general manager of Criticare, asked Fowler to ship two handguns and live ammunition to Gordon Garber, the owner of Criticare, who was on vacation.

Fowler told Moore that he believed it was unlawful to ship the guns. He refused to ship them and told Moore that, if Criticare shipped the guns, he would report the activity to United Parcel Service (UPS), the shipper customarily used by Criticare. Fowler then left the building to make deliveries. While he was gone, Moore shipped the guns and ammunition through UPS. When

Fowler returned, he learned of Moore's actions and reported them to UPS. Fowler did not tell Moore or Garber that he had made good on his threat to make a report to UPS, and they were unaware of it until Garber was contacted by an agent of the federal Bureau of Alcohol Tobacco and Firearms (BATF) several months later.

The next day, Fowler was late to work. Moore suspended Fowler without pay, and Garber instructed Moore to fire Fowler for repeated tardiness and for sloppy attire.

In his petition alleging retaliatory discharge, Fowler stated:

"13. On or about August 6, 1996, Plaintiff refused Defendant's request that he violate 18 U.S.C. § 922(e) which provides as follows:

'It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped. . . .'

"14. At no time did Defendant provide written notification to United Parcel Service that it was sending a package through that carrier that contained firearms and ammunition.

"15. The written policies of United Parcel Service that pertain to the shipment of firearms and ammunition provide that the carrier will only transport such items from a licensed gun dealer, or if the firearms were made before 1898.

"16. Defendant is not a licensed gun dealer, and the firearms shipped through United Parcel Service were not made before 1898.

"17. Defendant's intentional shipment of a package containing firearms and ammunition, without providing written notice to the carrier, was a violation of federal law, specifically, 18 U.S.C. § 922(e).

. . . .

"19. A reasonably prudent person would have believed that Defendant's activities were in violation of federal law.

"20. Plaintiff actually believed that Defendant's actions were in violation of federal law.

"21. Plaintiff advised Defendant, through its agents and employees, and specifically through Scott Moore, that its actions were in violation of federal law.

"22. Plaintiff advised Defendant, prior to his discharge, of his intent to report Defendant's actions to the appropriate authorities if, in fact, it shipped firearms and ammunition via United Parcel Service in violation of federal law.

"23. Defendant had knowledge of Plaintiff's refusal to violate 18 U.S.C. § 922(e) prior to its decision to discharge him from employment.

"24.  Plaintiff's refusal to engage in unlawful conduct, his reporting to Defendant that its actions were unlawful, and his reporting Defendant's actions to outside entities were done in good faith.

"25.  The statute which Defendant violated, in transporting a package known to contain firearms and ammunition, was enacted in furtherance of public health and safety.

"26.  Defendant retaliated against Plaintiff for his refusal to violate a federal criminal statute by terminating his employment a mere five days after the event occurred."

After the deadline for amendment of pleadings and the close of discovery, but before the scheduled pretrial conference, the district court granted summary judgment to Criticare on Fowler's claim that he was terminated for refusing to violate the law, noting that the statute cited by Fowler did not make it "unlawful for a person to ship firearms or ammunition by common carrier so long as written notice is provided to the carrier that such firearm or ammunition is being transported or shipped." The district court also observed that there was no evidence Fowler was told to ship the firearms and ammunition in a way that would violate the statute.

With regard to Fowler's whistle-blowing claim, the district court said Fowler's disagreement with and threat toward Moore did not rise to the level of a whistle-blower report to company management. In addition, the district court found there was no evidence Moore or Garber knew of Fowler's actual report to UPS before Fowler's termination.

Fowler filed a motion for reconsideration, which had the opposite of its intended effect. At the hearing on the motion, the district court found that Fowler failed to plead retaliatory discharge for whistle-blowing in his petition and modified its previous decision, concluding that it should not have considered the merits of the whistle-blowing claim at all.

On appeal, Fowler first questions the district court's decision that the petition failed to plead a whistle-blowing claim. He then takes issue with the summary judgment on the merits of his two claims. For the reasons set forth below, we affirm.

*Standard of Review*

The standard of review applicable to cases disposed of by the district court on motion for summary judgment is a well-established and familiar one:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. . . . On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

In short, if Fowler failed to come forward with evidence sufficient to reach a jury on each element of his claims, summary judgment was appropriate.

### Sufficiency of Pleading

Fowler argues first that the district court's decision on his motion to reconsider was error. He relies on Kansas' stated policy of notice pleading and contends that his petition was sufficient to inform Criticare he intended to pursue a retaliatory discharge claim based on whistle-blowing.

Fowler is correct that K.S.A. 1999 Supp. 60-208 demands little in the way of specificity in Kansas pleadings:

"(a)  *Claims for relief.* A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain: (1) A short and plain statement of the claim showing that the pleader is entitled to relief. . . .

. . . .

"(e)  *Pleading to be concise and direct; consistency.* (1)   Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

(2)   A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. . . . A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or on equitable grounds or on both. . . .

"(f)  *Construction of pleadings.* All pleadings shall be so construed as to do substantial justice."

In addition, under 60-208, liberal construction of pleadings is the rule. This point is emphasized by Judge Spencer A. Gard and Professor Robert C. Casad:

"Now that discovery in its broadest scope is available to all parties, the need for technical pleading vanishes from the picture. The parties normally have no great need for anything more than a bare-bones pleading which outlines the nature of the claim. The technical distinctions between the allegation of conclusions and ultimate facts, or with the distinction between pleading of ultimate facts and evidence that plagued lawyers under the Code pleading regime, are no longer a factor in state practice. Nor are we any longer greatly concerned with whether every allegation, considered necessary at common law, is pleaded or not, so long as the statement of the claim fairly apprises us of its substance. Discovery will easily fill the gaps, and more effectively.

"Under the Kansas Code of Civil Procedure, the pleading of a precise cause of action is not required. Its real function is to give notice and to that end liberal construction is indicated." 1 Gard and Casad, Kansas C. Civ. Proc. 3d Annot. § 60-208, Art. 2-40 (1997).

The Supreme Court's decision in *Oller v. Kincheloe's, Inc.*, 235 Kan. 440, 681 P.2d 630 (1984), convincingly demonstrates the principles described by Gard and Casad. Plaintiff Melvin A. Oller filed a claim regarding an allegedly defective combine he bought from Kincheloe's, Inc. (Kincheloe's). The trial court granted summary judgment for Kincheloe's on the ground that Oller's petition pleaded only an express warranty claim, preventing him from proceeding on breach of implied warranty and negligence theories.

The Supreme Court reversed, finding references in Oller's petition to the combine's defects and lack of merchantability, and to alleged negligence in the defendant's repair of it. 235 Kan. at 450. In the words of the court: "It is not necessary to spell out a legal theory of relief so long as an opponent is apprised of the facts that entitle plaintiff to relief." 235 Kan. at 447; see also *In re Estate of Moe*, 11 Kan. App. 2d 244, 249-50, 719 P.2d 7, *rev'd on other grounds*, 240 Kan. 242, 729 P.2d 447 (1986) (petition gave notice of facts giving rise to an action based on particular theory; pleading of precise cause of action not required; pleadings given liberal construction).

We are satisfied that Fowler sufficiently pleaded a cause of action for wrongful termination for whistle-blowing under 60-208 and the notice pleading policy it codifies. His petition set forth facts that could give rise to a retaliatory discharge for whistle-blowing theory: In addition to alleging that he was fired after he

refused to engage in unlawful conduct, he alleges that he was discharged after reporting his supervisor's unlawful conduct. In addition to these allegations of fact, the petition tracked language and requirements familiar from Kansas' seminal case on the whistle-blowing exception to the doctrine of employment at will: the allegedly unlawful conduct violated a statute designed to protect "public health and safety"; Criticare personnel were aware of Fowler's refusal to violate the law prior to his discharge; and Fowler reported the supervisor's conduct "in good faith." See *Palmer v. Brown*, 242 Kan. 893, 900, 752 P.2d 685 (1988). His petition could have been more explicit, but its wording was not fatal to his pursuit of his whistle-blowing claim.

Because we find, as discussed below, that the district court was correct in granting summary judgment to Criticare on the merits of both claims, despite its error on the pleading issue, we need not reverse for trial. See *Bergstrom*, 266 Kan. at 875-76 (quoting *Bank of Kansas v. Davison*, 253 Kan. 780, 792, 861 P.2d 806 [1993]).

### Retaliatory Discharge for Whistle-Blowing

The trial court originally granted Criticare's motion for summary judgment on the claim of retaliatory discharge for whistle-blowing because it found (1) Fowler's discussion with Moore was *not* the type of internal reporting contemplated by *Palmer*, 242 Kan. 893, and (2) Fowler's report to UPS could not form the basis of a whistle-blower claim because there was no evidence Moore or Garber knew before they fired Fowler that he had carried out his threat to make such a report.

In *Palmer*, the Supreme Court laid out the elements of a claim for retaliatory discharge for whistle-blowing:

"To maintain such action, an employee has the burden of proving by clear and convincing evidence, under the facts of the case, a reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; *the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee*; and the employee was discharged in retaliation for making the report." (Emphasis added.) 242 Kan. at 900.

In addition, the reporting must have been done in good faith, and the infraction must have been reported to *either company management or law enforcement officials.*" (Emphasis added.) 242 Kan. at 900.

We agree with the district court that neither evidence of Fowler's discussion with Moore nor of his report to UPS was sufficient for him to survive summary judgment. Fowler's disagreement with Moore was just that; it did not qualify as an internal report to management of illegal coworker or company conduct. Further, we are unpersuaded by Fowler's argument that Moore was the general manager, and that Fowler understood the initial directive to have come from Moore's boss, the owner of the company. There was nothing about the fact that Fowler worked for a smaller company that prevented him from reporting to law enforcement, if he felt company reporting avenues were closed to him. *Palmer* simply was not meant to endow every workplace dispute over the water cooler on company practices and the effect of government regulation with whistle-blower overtones. A worker who wants to come under the protections of that decision must seek out the intervention of a higher authority, either inside or outside of the company.

The evidence regarding Fowler's report to UPS also does not meet the *Palmer* standard we have just recited and discussed. It does not qualify as a report to higher management at the company or to law enforcement. In addition, Fowler admitted he did not inform Moore or Garber that he had carried out his threat to report to UPS, and no whistle-blowing claim arises unless the discharging employer is aware of the discharged employee's report prior to termination. Here, Criticare did not learn that Fowler informed UPS until long after Fowler's departure, when the federal agent from BATF came calling.

Evidently recognizing this infirmity in his case, Fowler asks us to extend *Palmer* protection to situations in which an employee has merely threatened to blow the whistle prior to his or her discharge. An employer's knowledge of the threat should be equivalent, Fowler argues, to an employer's knowledge of the actual whistle-blowing. We simply do not believe the Supreme Court intended

*Palmer* to be so extended. We—and litigants—must remember that *Palmer's* holding defines an exception in employer/employee relations rather than the rule.

### Retaliatory Discharge for Refusal to Break the Law

The district court also granted summary judgment to Criticare on Fowler's claim that he was discharged in retaliation for his refusal to violate 18 U.S.C. § 922(e) (1994), or for his refusal to engage in conduct he "reasonably believed" would be a violation of that or some other statute or public policy protecting the public.

The district court found that Moore's request did not actually require Fowler to violate federal law and thus could not support this claim. There is no evidence in the record that Moore explicitly told Fowler to ship the guns and ammunition by any particular carrier or in any manner that would violate federal law. Moore merely asked Fowler to ship the items.

Fowler argues, however, that Moore's request necessarily required him to violate 18 U.S.C. § 922(e), which provides in pertinent part:

"It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition *without written notice to the carrier* that such firearm or ammunition is being transported or shipped." (Emphasis added.)

In essence, Fowler advocates for our acceptance of a simple syllogism: First, UPS was the shipping company Criticare customarily used and, according to Fowler, it had a policy disallowing the shipment of firearms, unless the shipper was a licensed dealer, manufacturer, or importer; second, if the written notice required under 18 U.S.C. § 922(e) were provided, UPS would have refused to ship the materials; therefore, when Moore asked Fowler to ship the guns and ammunition, he was implicitly demanding that Fowler try to sneak the items by UPS in violation of federal law and UPS policy.

Unfortunately for Fowler, he has proof problems on each of the premises necessary to his conclusion. With regard to the first premise, the purported UPS policy he attempted to employ during Moore's deposition and then attached to his response to Criticare's motion for summary judgment and to his appellate brief has not been authenticated by anyone from UPS. Moreover, Moore testified that, because of Fowler's concern, he looked in his UPS brochure and found nothing to suggest it was illegal to ship the guns and ammunition.

With regard to the second premise, Fowler admitted he did not know if UPS would have approved the shipping if he had notified it in writing. There is no evidence that he sought an exception to the purported policy by complying with the statute. Although it was the duty of the district court and it is our duty on appeal to view the evidence in the light most favorable to Fowler, the non-moving party, we are not required to assume facts for which there is no record support. We need not take the accuracy of Fowler's premises on faith alone.

Fowler also cannot cure the deficiencies in this claim by saying that, even if the behavior Moore sought was not actually illegal, it was behavior Fowler "reasonably believed" was illegal. Although *Palmer* includes an employee's "reasonable belief" that certain conduct is illegal among the justifications for protected whistleblowing, neither the Supreme Court nor the Kansas Legislature has said that such a belief is enough to protect what an employer would view as simple insubordination. The cases Fowler would have us rely on are whistle-blowing cases, rather than cases involving an employee's refusal to engage in conduct the employee reasonably believed was illegal. See *Byle v. Anacomp, Inc.*, 854 F. Supp. 738, 746 (D. Kan. 1994); *Pilcher v. Board of Wyandotte County Comm'rs*, 14 Kan. App. 2d 206, 211, 787 P.2d 1204, *rev. denied* 246 Kan. 768 (1990); *Cf.* N.J. Stat. Ann. § 34:19-3 (2000) (New Jersey statute prohibiting employer from retaliating against employee who objects to activity employee "reasonably believes is in violation of a law" or is incompatible with clear mandate of public policy concerning public health, safety, or welfare).

Even if a "reasonable belief" were enough to excuse an employee from performance of a task assigned to him or her by a Kansas employer, again, there is no evidence that Fowler made any effort to arrive at such a belief in this case. He did not attempt to discern whether UPS would have refused to make an exception to its policy or whether another carrier would have refused to ship the items once the written notice of the statute was provided. He simply assumed that it was illegal to ship the guns and ammunition and that no carrier would ship them if fully informed. His assumption does not create a genuine issue of material fact on whether he held a "reasonable belief," especially when both the statute and policy on which he wishes to rely necessarily suggest that firearms and ammunition *can* be shipped lawfully on carriers such as UPS.

The district court's award of summary judgment in favor of Criticare is affirmed.