David V. MCCAULEY, Plaintiff,

v.

**RAYTHEON TRAVEL AIR CO., Defendant.**

No. 00–2017–JWL.

United States District Court, D. Kansas.

Feb. 22, 2001.

1268

Edward A. McConwell, McConwell Law Offices, Mission, KS, for plaintiff.

Terry L. Mann, Roger E. McClellan, Rebecca A. Hesse, Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This case comes before the court on defendant's summary judgment motion (Doc. 46) and defendant's motion for determination of place of trial (Doc. 44). For the reasons set out below, the motion for summary judgment is granted, the motion for determination of place of trial is denied as moot, and the plaintiff's complaint is hereby dismissed.

### 1. Uncontroverted facts

Plaintiff David McCauley was hired as a pilot for defendant Raytheon Travel Air Co. ("Raytheon") on August 18, 1997.

Raytheon sells fractional ownership in aircraft and provides support services, including pilots, to the owners of the aircraft. Mr. McCauley received an offer of employment by letter on August 15, 1997. The letter indicated that "Raytheon Aircraft is an at-will employer" and that "oral statements which may have been made to you during your interview and discussion are valid only to the extent to which they conform to the terms of this letter."[1] Mr. McCauley testified in his deposition that at the time he received the offer of employment, he believed that Raytheon would not terminate anyone who complied with the Rules of Conduct and "was doing a good job" but that he understood that he could be terminated without cause at any time. Upon accepting the job offer, Mr. McCauley was required to sign a Training Reimbursement Agreement whereby Mr. McCauley agreed to reimburse Raytheon for training costs if he quit within one year of receiving training.

In early 1999, Mr. McCauley received a revised Flight Crew Policy Manual. The manual provided that Raytheon "is an 'at-will' employer" and "reserves the right to terminate employment at any time without advance notice." The manual said that reasons for termination "may include but are not limited to" nine reasons listed in the manual. Mr. McCauley was required to take a test on the manual, with one question asking Mr. McCauley to list five reasons that an individual may be terminated.

Raytheon policy prohibits being under the influence of alcohol at work and calls for termination of employment upon the first such offense. Mr. McCauley was instructed to report to Raytheon's office in Wichita on May 12, 1999. When Mr. McCauley arrived at Raytheon's Wichita office, he was told that he was selected for a random drug and alcohol test. Mr. McCauley was tested in-house for blood alcohol at 10:37 a.m. and again at 10:45 a.m. The tests reported a blood alcohol level of .069 and .062 respectively. Mr. McCauley was fired when management learned the results of the tests.

Mr. McCauley has applied for work with other companies but has not been hired. Mr. McCauley's pilot's license was revoked by the FAA on June 6, 2000, because Mr. McCauley was diagnosed as suffering from alcoholism and, therefore, failed to meet FAA medical standards.

### 2. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Adler v. Wal-*

---

1. Mr. McCauley points out in his response that the letter was signed by a representative of Raytheon Aircraft Company and not Raytheon Travel Air. The letter offers Mr. McCauley a position "as a Beechjet—400A—First Officer—Travel Air." The letter and employment offer is attributable to Raytheon Travel Air even if the letter was authored by an employment representative of Raytheon Aircraft Company acting on behalf of Raytheon Travel Air. In his statement of uncontroverted facts, Mr. McCauley says that "Raytheon Aircraft Company offered employment to

McCauley ... for RTA" in the August 15 letter and that he accepted the offer for "employment with RTA [Raytheon Travel Air]." Furthermore, Mr. McCauley does not controvert the defendant's statement that "[e]mployees of RTA are also subject to the policies and procedures of RAC [Raytheon Aircraft Company]." Pursuant to Local Rule 56.1, "[a]ll material facts set forth in the statement of the movant" are "deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."

*Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, the movant may simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the

nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### 3. Discussion

Mr. McCauley asserts four causes of action in his complaint. All four fail to survive the defendant's summary judgment motion.

#### a. Breach of an implied employment contract

■ Count One of the plaintiff's first amended complaint alleges that Mr. McCauley had an implied contract with Raytheon providing that Mr. McCauley would be fired only for good cause and that Raytheon breached the contract because Mr. McCauley was not fired for good cause.[2] Raytheon argues that there is a lack of evidence to show that Mr. McCauley and Raytheon entered into such an implied contract.[3] Specifically, Raytheon argues that there is no evidence that Raytheon manifested an intent to enter into a contractual employment relationship, only evidence of Mr. McCauley's unilateral expectation of continued employment.

■ The Kansas Supreme Court decision in *Morriss v. Coleman Co.*, 241 Kan. 501, 513, 738 P.2d 841 (1987), directs courts to look to the intent of the parties

**2.** Under Kansas law, employment is presumed to be at will unless the parties have an express or implied contract covering the duration of employment. *See Allegri v. Providence–St. Margaret Health Center*, 9 Kan. App.2d 659, 684 P.2d 1031, Syl. 4 (1984). If Mr. McCauley was an employee at-will, he does not state a claim under Kansas law. "In the absence of an express or implied contract of duration or where recognized public policy concerns are raised, employment is terminable at the will of either party." *Riddle v. Wal–Mart Stores, Inc.*, 27 Kan.App.2d 79, 998 P.2d

114, Syl. 2 (2000). An employee at-will may be terminated "at any time with or without cause." *Wiggins v. Housing Authority of Kansas City*, 22 Kan.App.2d 367, 370, 916 P.2d 718 (1996).

**3.** Raytheon also argues that Mr. McCauley was fired for cause. Because this court concludes that Mr. McCauley has not presented sufficient evidence of an implied contract to survive summary judgment, the court will not consider whether Mr. McCauley was fired for cause.

to decide if an implied employment contract exists:

> Where it is alleged that an employment contract is one to be based upon the theory of 'implied in fact,' the understanding and intent of the parties is to be ascertained from several factors which include written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.

For an implied employment contract to exist, both parties must intend to enter into a contract with terms other than employment at-will. *See Allegri v. Providence–St. Margaret Health Center,* 9 Kan. App.2d 659, 663, 684 P.2d 1031 (1984) ("A contract implied in fact arises from facts and circumstances showing mutual intent to contract.").

■ To show that there was an implied employment contract, Mr. McCauley points to his own deposition where he said, "[b]eing an employee at will, I wouldn't think [Raytheon] would let anybody go who upheld to all the standards and was doing a good job." Mr. McCauley repeatedly admitted in his deposition that he understood that he was an employee at will, that he could quit at any time or be fired at any time for any reason. At most, Mr. McCauley's deposition establishes the possibility that Mr. McCauley had a unilateral expectation not to be fired without cause. Unilateral expectations of an employee are not evidence of an implied contract. *See Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 133, 815 P.2d 72 (1991) ("Such an agreement cannot be established solely by the employee's subjective understanding or expectation about his or her employment."); *Mid–West Painting, Inc. v. State of Kansas Employment Security Board of Review,* 26 Kan.App.2d 266, 270–71, 984 P.2d 146 (1999) ("The unilateral expectations of an employee do not create an implied contract for continuing employment."). Even if Mr. McCauley based his expectation on some general comments made by Raytheon employees, to survive summary judgment, he "must offer more specific statements to demonstrate the provisions of the alleged implied contract by outlining contractual conditions governing when termination would be proper or setting forth the contractual duration of employment." *Bullock v. Dillard Department Stores, Inc.,* 1992 WL 350229, \*3 (D.Kan. Oct.20, 1992) ("plaintiff's affidavit does not reveal even one specific statement made to her from which the court could find a genuine issue of material fact regarding the defendant's intent on the issue of an implied employment contract").

■ Mr. McCauley also suggests that the Training Reimbursement Agreement he signed is evidence of an implied employment contract. Under the contract, Mr. McCauley agreed to reimburse Raytheon for training costs if he quit within one year of receiving training. The agreement acknowledges that Mr. McCauley can leave his employment at any time and for any reason. Mr. McCauley was not required to reimburse Raytheon if his employment was terminated. Because Raytheon does not require employees to reimburse costs if they are fired, the agreement does not imply that Raytheon will restrict its ability to fire employees. Mr. McCauley argues that the agreement restricts an employee's ability to quit at any time and, therefore, is evidence of an implied contract. The contract provides

that Raytheon will pay the unusually high costs of training its pilots if the pilots will agree to reimburse Raytheon if they quit within one year of receiving the training. It does not follow that Raytheon also agrees to restrict its ability to fire a pilot. In fact, the agreement is evidence that Mr. McCauley remained an employee at will because it reaffirms that Mr. McCauley may quit his job at any time and for any reason.

■ Mr. McCauley suggests that the revised Flight Crew Policy Manual and the test he took on the manual suggest an intent that he be terminated only for the nine reasons listed in the manual.[4] The section of the manual that Mr. McCauley points to says that Raytheon "is an 'at-will' employer," "reserves the right to terminate employment at any time without advance notice," and says that reasons for termination "may include but are not limited to" the nine reasons listed in the section. No reasonable jury could conclude that this section of the manual or the test on the manual shows that Raytheon intended to enter into an implied contract with Mr. McCauley to alter the terms of his at-will employment. *See Kastner v. Blue Cross Blue Shield of Kansas, Inc.*, 21 Kan.App.2d 16, 25, 894 P.2d 909 (1995) ("[t]elling an employee about certain grounds for termination is not the same as telling an employee that he or she will not be terminated absent those grounds."); *Jonker v. Melvin Simon & Associates, Inc.*, 1989 WL 31402, *10 (D.Kan. March 1, 1989) (holding that a disclaimer in the

employee manual specifying that it is not intended to create an employment contract, unlike the disclaimer in *Morriss*, was dispositive because "plaintiff did not controvert the fact of this disclaimer nor did he even suggest that he had not read it as part of the documents given to him during his employment.").

■ Mr. McCauley points to deposition testimony by Gary Hart, the president of Raytheon, where Mr. Hart says that Raytheon does not fire pilots for not flying when they are unhealthy. Mr. McCauley argues that this testimony shows "that there are reasons that an employee would not be terminated, ever, and, therefore, that an implied-in-fact employment contract existed between McCauley and [Raytheon]." The failure to terminate employees in some situations, such as good behavior, does not create an implied contract with all employees to terminate their employment only for cause. *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 173, 872 P.2d 252 (1994) ("The mere fact that an employee has not been previously terminated under written contractual employment-at-will provisions does not create an implied contract for continuing employment."); *Anglemyer v. Hamilton County Hospital*, 58 F.3d 533, 537 (10th Cir.1995) ("The only evidence that plaintiff has to establish an implied contract is her own subjective belief that she would not be terminated except for cause, testimony that while Steve Kralik was CEO, employees were not terminated at ran-

4. In its reply, Raytheon argues that the court should strike several statements made by Mr. McCauley in his affidavit because they contradict testimony from his deposition. In one of the challenged statements in the affidavit, Mr. McCauley says that he answered the test question on the manual concerning reasons for termination believing that he "stated the only 'for cause' reasons contained in the Flight Crew Policy Manual." Like the other chal-

lenged statements, Mr. McCauley's statement does not controvert a material fact. Even if Mr. McCauley believed that the Manual indicated that employees were terminated only for cause, his unilateral subjective belief would not be relevant. The court declines to strike the portions of Mr. McCauley's affidavit because the challenged statements do not controvert a material fact and because Raytheon did not bring a formal motion to strike.

dom, and the fact that the hospital is located in a remote area of the state. This evidence is insufficient for a jury to find intent to contract for a term of employment or termination only for cause."). Even if Mr. Hart had testified that Raytheon does not fire employees absent cause, this alone is insufficient to show the existence of a contract with Mr. McCauley. *Burke v. BDM Technologies, Inc.,* 1999 WL 40973, *3 (10th Cir. Feb.1, 1999) ("As a matter of policy, this Court will not consider evidence that a company does not usually fire employees without a good reason as by itself establishing that the company does not maintain an at-will employment policy. To do otherwise would encourage employers to occasionally fire employees for no other reason than to show that they maintain the freedom to do so.").

■ Finally, Mr. McCauley suggests that he was under an implied contract whereby he could be terminated only for good cause because of the nature of his employment. Mr. McCauley points out that "pilots are trusted with the lives of their passengers," that "hiring of such employees is a very serious matter that requires a great deal of background investigation," and that a pilot who has been terminated from employment "has a more difficult time finding new employment in their chosen profession than an ordinary person," and argues that "these factors indicate that ... [Raytheon] was not expected to terminate McCauley absent just cause." The *Morriss* decision lists "the nature of the employment" as a factor relevant to determining the intent of the parties. *See Morriss v. Coleman Co.,* 241 Kan. at 501, 738 P.2d 841. Kansas case law does not clarify the meaning of this factor, but the *Morriss* decision makes it clear that a court may consider any circumstance that "would tend to explain or make clear the intentions of the parties." In this case, the nature of a pilot's job is not particularly instructive. An employer who offers a job that is difficult to obtain and carries great responsibility may agree to compensate an employee who accepts the position with a large salary or excellent benefits and still not intend to enter into a contract to terminate the employment only for cause. If the nature of a pilot's job is at all instructive of the parties' intent, it pales in comparison to the express language of the letter offering Mr. McCauley the job and the employee manual. Both plainly state the employment is at will. On the basis of evidence about the nature of a pilot's job alone, no reasonable jury could conclude that Raytheon and Mr. McCauley entered into an implied employment contract.[5]

Summary judgment for the defendant on Count One is appropriate because there is not sufficient evidence from which a reasonable jury could find that Raytheon and the plaintiff entered into an implied contract whereby Mr. McCauley's employment would be terminated only for cause.

b. Retaliatory discharge

■ In Count Two, Mr. McCauley alleges that he was fired in retaliation for taking sick leave, for refusing to accept an assignment to fly to Little Rock and for complaining that Raytheon's flight scheduling was unsafe. Under Kansas law, retaliatory discharge actions must establish that the discharge was "based on" the employee's exercise of a protected right, *Ortega v. IBP, Inc.,* 255 Kan. 513, 526, 874 P.2d 1188 (1994), and plaintiffs must establish their claim "by a preponderance of the evidence, but the evidence must be clear and convincing in nature." *Id.* at 528, 874

---

**5.** The plaintiff does not cite and this court does not find any case where a court relies on the nature of an employee's work in finding an implied contract.

P.2d 1188. Evidence is clear if "it is certain, unambiguous, and plain to the understanding," and convincing "if it is reasonable and persuasive enough to cause the trier of fact to believe it." *Id.*

In analyzing retaliatory discharge claims brought under Kansas law, federal courts apply the burden shifting approach established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Sanjuan v. IBP, Inc.,* 160 F.3d 1291, 1298 (10th Cir.1998); *Foster v. AlliedSignal, Inc.,* 98 F.Supp.2d 1261, 1267 (D.Kan.2000). To establish a prima facie case of retaliation, Mr. McCauley must demonstrate that (1) he was engaged in a protected activity, (2) he was fired subsequent to or contemporaneous with such activity; and (3) a causal connection exists between the protected activity and his termination. *See id.* Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nonretaliatory reason for its actions. *See id.* If the defendant comes forward with a legitimate reason for its actions, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the defendant's proffered reason for the challenged action is pretextual. *See id.*

In his response, Mr. McCauley abandons the theories that he was fired for complaining about flight scheduling and for taking sick leave.[6] Mr. McCauley, instead, argues that he was fired for refusing to take the Little Rock flight and that his refusal was pursuant to his "statutory duty not to operate an aircraft when sick." To establish that his refusal was a protected activity, Mr. McCauley points to FAA regulations that provide that a pilot "shall not act as pilot in command, or in any other capacity as a required pilot flight crew member" if the pilot has "any medical condition that would make the person unable to meet the requirements for the medical certificate necessary for the pilot operation." 14 C.F.R. § 61.53.

The Kansas legislature has defined by statute several protected activities, related to reporting certain types of abuses, and Kansas courts have recognized that filing a workers' compensation claim and reporting a serious infraction of rules, regulations or laws by a co-worker are also protected activities. *See Palmer v. Brown* 242 Kan. 893, 896–900, 752 P.2d 685 (1988). Beyond these activities, Kansas precedent provides that courts should not declare the existence of public policy that protects the activity of an employee unless the policy is "so thoroughly established as a state of public mind so united and definite and fixed that its existence is not subject to any substantial doubt." *Id.* at 897, 752 P.2d 685.

In *Palmer v. Brown,* 242 Kan. 893, 752 P.2d 685 (1988), the Kansas Supreme court recognized that employees engage in a protected activity when "performing their civil duty of reporting infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare." *Id.* at 896–900, 752 P.2d 685. Under this public policy exception to employment at will, an employee may report a violation either to company management or to law enforcement. *See Palmer,* 242 Kan. at 900, 752 P.2d 685. Mr. McCauley did not report a violation of FAA regulations to company management, but refused to take the flight because he was unhealthy and, perhaps, because he believed that flying would violate FAA regulations.

Refusing to perform a task, even in the belief that it is unlawful, does not constitute a protected activity under Kan-

---

6. The plaintiff does not present any evidence indicating that he was fired for these reasons and, therefore, they would not help the plaintiff survive summary judgment on Count Two.

sas public policy. In *Fowler v. Criticare Home Health Services, Inc.*, 27 Kan. App.2d 869, 10 P.3d 8, 16 (2000), an employee of Criticare, Matthew Fowler, refused to comply with his manager's order to ship guns through United Parcel Service ("UPS") because he believed it was unlawful. Mr. Fowler told his manager that he believed it was unlawful and threatened to report the violation to UPS if his manager shipped the guns. Mr. Fowler was fired the next day after arriving to work late. The Kansas Court of Appeals rejected Mr. Fowler's claim that his refusal to ship the guns constituted protected activity under the public policy exception to at will employment. The court explained that "Fowler's disagreement with Moore was just that; it did not qualify as an internal report to management of illegal coworker or company activity." *Id.*, 10 P.3d at 14–15. According to the court, "*Palmer* simply was not meant to endow every workplace dispute over the water cooler on company practices and the effect of government regulation with whistle-blower overtones." *Id.* at 15. The court concluded that "to come under the protections of [*Palmer* ]" an employee "must seek out the intervention of a higher authority, either inside or outside of the company." *Id.* at 15.

Mr. McCauley, like Mr. Fowler, did not seek out the intervention of a higher authority in the company or outside of the company. Mr. McCauley simply refused to take the flight. He did not even justify his refusal by explaining that he believed that FAA regulations forbid him from taking the flight. Following the logic of the *Fowler* decision, Mr. McCauley's act of refusing to take the Little Rock flight did not rise to the level of a protected activity under *Palmer*.

Mr. McCauley's act was not a protected activity defined by statute, nor was it a protected activity under Kansas common law as it defines the public policy exception to employment at will. Mr. McCauley, therefore, fails to establish a prima facie case of retaliatory discharge and summary judgment for the defendant on Count Two is appropriate.

c. Defamation

 Count Three of the complaint alleges that Raytheon "has communicated false information about Mr. McCauley and his termination to persons within and outside of Raytheon that has exposed McCauley to public hatred, contempt, humiliation and/or ridicule." In Kansas, the elements of the tort of defamation are: (1) false and defamatory words, (2) communicated to a third person, (3) which result in harm to the reputation of the person defamed. *Lindemuth v. Goodyear Tire & Rubber Co.*, 19 Kan.App.2d 95, 102, 864 P.2d 744 (1993). Raytheon argues that Mr. McCauley has no evidence that any false statements were made to a third party. Mr. McCauley points to his deposition where he claims to have heard a rumor that he was "pulled off a plane drunk" and that he was told by Raytheon officials that they would inform the Department of Transportation that Mr. McCauley was fired for being intoxicated while on duty. The rumor heard by Mr. McCauley that he was "pulled off a plane drunk" is not admissible evidence and does not show that Raytheon was the source of the rumor. *See Chodosh v. Franklin University*, 1997 WL 596284, *3 (Ohio Ct.App. Sept. 23, 1997) (holding that a plaintiff's claim that he heard rumors that he was fired for sexual harassment "simply does not permit a reasonable inference that rumors about his termination were communicated by [the defendant] to any third parties"); *Wallace v. Casa Grande Union High School District No. 82 Board of Governors*, 184 Ariz. 419, 424, 909 P.2d 486 (Ariz.Ct.App.1995) (granting summary judgment for defendant in a defamation suit based on rumors

because rumors are inadmissable hearsay.) Mr. McCauley's allegation that Raytheon officials told him that Raytheon would inform the Department of Transportation that Mr. McCauley was terminated for being intoxicated while on duty is not sufficient evidence for a reasonable jury to conclude that Raytheon actually made the report.[7] To survive summary judgment, Mr. McCauley would need to present some evidence showing that such a report was actually made to the Department of Transportation.

 In addition to his own deposition, Mr. McCauley points to an affidavit of John Sewell, a former pilot with Raytheon, where Mr. Sewell says that he heard Mike Marotta, Raytheon's head of crew scheduling, tell "several people" at Raytheon that Mr. McCauley was fired for being under the influence of alcohol when on duty. Following the United States Supreme Court decision in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), Kansas no longer permits recovery for slander without evidence of damages. *Knudsen v. Kansas Gas & Electric Co.*, 248 Kan. 469, 474, 807 P.2d 71 (1991). "Unless injury to reputation is shown, plaintiff has not established a valid claim for defamation, by either libel or slander, under [Kansas] law." *Gobin v. Globe Publishing, Co.*, 232 Kan. 1, 6, 649 P.2d 1239 (1982). In order to survive summary judgment, therefore, Mr. McCauley must present some evidence showing that the statement by Mr. Marotta caused identifiable damages. Injury to Mr. McCauley's reputation may not be presumed under Kansas law. *Id.*

The only evidence of damages that Mr. McCauley presents is his inability to gain employment after being fired by Raytheon. Mr. McCauley does not provide any evidence linking his inability to gain employment to the statement by Mr. Marotta. Mr. McCauley points to the affidavit of Mark H. Goodrich, a pilot and consultant, where Mr. Goodrich says that "the actions taken by Raytheon will have the effect of precluding any practical opportunity for future employment by the plaintiff as a professional pilot." Mr. Goodrich's affidavit refers generally to Mr. McCauley being fired for failing the blood alcohol test and to the possibility that Raytheon will report to other employers that Mr. McCauley was fired for being intoxicated while on duty. The affidavit does not link the statement by Mr. Marotta to Mr. McCauley's inability to gain employment. It would be unreasonable for a jury to infer, without additional evidence, that Mr. Marotta's statement caused Mr. McCauley to be denied employment. Because Mr. McCauley failed to present sufficient evidence of damages, his defamation claim does not survive summary judgment.[8] *See*

---

7. Mr. McCauley also argues in his response to the defendant's motion that because he was terminated for failing the blood alcohol test, Raytheon's actions "have forced McCauley to defame himself each time he receives a job interview." Admissions by Mr. McCauley that he was fired for failing a blood alcohol test are neither false nor statements made by Raytheon. While the plaintiff does not develop the argument, Mr. McCauley's argument seems to be that he is forced to republish a false statement, that he was fired for being intoxicated on duty, when interviewing. The plaintiff maintained in the pretrial order that its defamation claim was based on Raytheon telling the "Kansas Department of Human

Resources and others" that Mr. McCauley was intoxicated while on duty. The court will not address the merits of the republication argument because it was not included in the pretrial order. *See Hullman v. Board of Trustees*, 950 F.2d 665, 668 (10th Cir.1991) ("[T]he pretrial order 'measures the dimensions of the lawsuit, both in the trial court and on appeal.'").

8. Because Mr. McCauley fails to present evidence of damages, this court need not consider whether Mr. McCauley presents sufficient evidence showing that the statement was false.

*Gomez v. Hug,* 7 Kan.App.2d 603, 612, 645 P.2d 916 (1982) ("There is no evidence of damages to Gomez from third persons resulting from the alleged defamation. Without such evidence there can be no recovery based upon defamation and, therefore, summary judgment for defendants was proper on this issue.").

### d. Pilot Records Improvement Act

Count Four alleges that Raytheon violated the Pilot Records Improvement Act, 49 U.S.C. § 44936, by "providing false and incomplete information to prospective aviation employers about the reasons for terminating McCauley." Section 44936 requires that air carriers maintain pilot records for five years and provide a copy of the records to other air carriers investigating a pilot who has applied for a job. 49 U.S.C. § 44936(f)(4). The act gives pilots the right to receive a copy of the records and requires that air carriers give pilots a reasonable opportunity to "submit written comments to correct any inaccuracies contained in the records." 49 U.S.C. § 44936(f)(6), (f)(9). The act does not prohibit employers from providing false or incomplete information about a pilot's record. Even if it did, Mr. McCauley does not present any evidence indicating that Raytheon provided a copy of his records to other air carriers.[9] Summary judgment on Count Four is appropriate because Mr. McCauley has not presented evidence showing that Raytheon violated a provision of the act.[10]

**IT IS THEREFORE ORDERED BY THE COURT THAT** the defendant's motion for summary judgment (Doc. 46) is granted, defendant's motion for determination of place of trial (Doc. 44) is denied as moot, and the plaintiff's complaint is hereby dismissed.

---

9. In his response, Mr. McCauley argues that Raytheon could, in the future, provide information pursuant to a request by another air carrier that falsely indicates that Mr. McCauley was fired for being intoxicated while on duty. Mr. McCauley lacks standing to sue over the possibility that Raytheon will provide such information in the future. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 105–06, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (holding that standing requires a real or immediate threat of future harm).

10. The act does not expressly provide for a private cause of action. The section of the act entitled "limitation of liability" provides that no defamation action may be brought against a person complying with the disclosure provisions of act unless the person knows the information is false. This portion of the act does not create an express cause of action, as the parties suggest. While the act does not expressly create a private cause of action, it may create an implied private cause of action. The court, however, does not reach this issue because the plaintiff did not present evidence showing that the defendant violated the act.